# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### GAINESVILLE DIVISION

AMANDA CRUZ,                :
                                :
        Plaintiff,         :
                                :
        v.                     :       CIVIL ACTION NO.
                                :       2:11-CV-00111-RWS
JOSHUA DAVIDSON, ANDY    :
PAGE, JOHN DOES 1-5 and     :
CORPORATIONS A-E,       :
                                :
        Defendants.

## ORDER

This case comes before the Court on Defendant Joshua Davidson's Motion to Dismiss [5] and Motion to Dismiss the Amended Complaint [10]. After considering the Record, the Court enters the following Order.

## Background[1]

This case arises out of the mistaken arrest and subsequent detention of Plaintiff pursuant to an arrest warrant issued for another person.  On June 19, 2010 at approximately 7:45 p.m., while driving with her two children in Hall County, Georgia, Plaintiff was stopped by Defendant Andy Page, a Georgia

---

[1] As the case is before the Court on a motion to dismiss, the facts alleged in the Amended Complaint are taken as true.  Cooper v. Pate, 378 U.S. 546, 546 (1964).

State Patrol trooper, for a suspected violation of the state's seat belt laws.  (Am.

Compl., Dkt. No. [7] ¶¶ 5-8.)  Defendant Page asked Plaintiff for her driver's

license, which showed her date of birth to be February 7, 1978.  (Id. ¶ 7.)  After

returning to the patrol car with Plaintiff's driver's license, Defendant Page

discovered an outstanding warrant for the arrest of a woman with the same

name as Plaintiff's.  (Id. ¶ 10; Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss

("Pl.'s First Brief"), Dkt. No. [8] at 9.[2])  When informed of the outstanding

warrant for her arrest, Plaintiff told Defendant Page that she had never been

arrested and that there were no outstanding warrants for her arrest, after which

Defendant Page again returned to his patrol car.  (Id. ¶ 11.)  Several minutes

later, Defendant Page asked Plaintiff if she had any tattoos, to which she replied

"no."  (Id. ¶ 11.)  Defendant Page then asked to see Plaintiff's upper right arm,

which bore no tattoos, and he could see that Plaintiff's legs likewise

---

[2]After Defendant filed his Motion to Dismiss for Failure to State a Claim [5], Plaintiff filed the Amended Complaint [7], mooting Defendant's original motion. Nonetheless, Plaintiff filed a brief in opposition to Defendant's original motion [8], which she incorporates by reference in her brief in opposition to Defendant's Motion to Dismiss the Amended Complaint [12]. The Court refers to Plaintiff's two submissions as "Plaintiff's First Brief" (Dkt. No. [8]) and "Plaintiff's Second Brief" (Dkt. No. [12]).

did not bear any tattoos.  (Id. ¶ 12.)  A few minutes later, Defendant Page handcuffed Plaintiff and placed her in the backseat of his patrol car.  (Id. ¶ 13.)

In the patrol car, Plaintiff saw a computer screen in the front dashboard showing the picture of a woman that was not Plaintiff.  (Id. ¶ 14.)  Plaintiff also heard over the patrol car radio a description of the woman for whom the arrest warrant had been issued: she was said to have been born on November 18, 1979 and was described as being 5' 1" in height with light red hair and tattoos on her right arm, left leg, and right ankle.  (Id.)  Plaintiff is 4' 8" in height, has dark brown hair and no tattoos, and, as stated above, was born on February 7, 1978. (Id. ¶ 15.)

Plaintiff alleges that "after confirming that the person for who [sic] the warrant had been issued did not match [Plaintiff]," Defendant Page removed Plaintiff from the patrol car.  (Id. ¶ 16.)  He again asked Plaintiff if she had any tattoos or if she had had any removed, to which Plaintiff responded in the negative.  (Id.)  Defendant Page decided to take Plaintiff to the Hall County jail for others to investigate her identity further.  (Id. ¶ 17.)

Defendant Davidson, a Hall County Sheriff jailor, was the officer who received Plaintiff and booked her into the jail.  (Id. ¶¶ 1, 20.)  When Plaintiff

first arrived at the jail, a female Hall County Sheriff jailor frisked Plaintiff and gave her a pair of jail flip flops.  (Id. ¶ 19.)  Davidson then placed Plaintiff in a holding cell for approximately one hour, after which Plaintiff was brought out for questioning.  (Id.)  Defendant Davidson and four or five other Sheriff jailors questioned Plaintiff about her identity (i.e., her "date of birth, social security number, maiden name, height, driver's license number and if she had any tattoos") while looking at an image on a computer screen.  (Id. ¶ 21.)  Each jailor who looked at the screen commented to Defendant Davidson that "Plaintiff did not fit the description and that the picture on the computer screen was not her."  (Id. ¶ 22.)  Defendant Davidson gave Plaintiff a ticket signed by Defendant Page for the offense of safety restraint violation and returned Plaintiff to the holding cell.  (Id. ¶ 23.)

Approximately one hour later, Plaintiff was brought out of the holding cell to be finger printed and photographed.  (Id. ¶ 24.)  She was thereafter returned to the holding cell, where she remained overnight before being released the next morning.  (Id. ¶¶ 25-26.)  Throughout the events described above, Plaintiff repeatedly asserted to Defendant Davidson and others that

there were no outstanding warrants for her arrest and that there was no justification for her incarceration.  (Id. ¶¶ 20, 22, 24.)

Based on the foregoing facts, Plaintiff has brought this action against Defendants Page and Davidson[3] seeking damages for unreasonable seizure under the Fourth Amendment, pursuant to 42 U.S.C. § 1983.  Plaintiff contends that Defendant Davidson violated her Fourth Amendment right to be free from unreasonable seizures by detaining Plaintiff "after gaining knowledge there was no probable cause for her to be retained and incarcerated."  (Id. ¶ 31.) Defendant Davidson moves to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## Discussion

### I.      Defendant's Motion to Dismiss [5]

After Defendant filed the original Motion to Dismiss [5], Plaintiff filed the Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B).  Accordingly, Defendant's Motion to Dismiss [5] is **DENIED as moot**.

---

[3] Also named as Defendants in the Amended Complaint are "John Does 1-5 and Corporations A-E."

## II.     Defendant's Motion to Dismiss the Amended Complaint [10]

### A.     Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id.

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). However, the same does not apply to legal conclusions set

6

forth in the complaint.  <u>Sinaltrainal v. Coca-Cola Co.</u>, 578 F.3d 1252, 1260

(11th Cir. 2009) (citing <u>Iqbal</u>, 129 S. Ct. at 1949).  "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not

suffice."  <u>Iqbal</u>, 129 S. Ct. at 1949.  The court does not need to "accept as true a

legal conclusion couched as a factual allegation."  <u>Twombly</u>, 550 U.S. at 555.

### B.    Plaintiff's Fourth Amendment Claim

Plaintiff brings her claim for damages pursuant to 42 U.S.C. § 1983,

alleging that Defendant Davidson violated her Fourth Amendment right to be

free from unreasonable seizures.  (Am Compl., Dkt. No. [7] ¶ 30.)  Section

1983 provides,

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress . . .

42 U.S.C. § 1983.  "In order to prevail in a civil rights action under section

1983, 'a plaintiff must make a prima facie showing of two elements: (1) that the

act or omission deprived plaintiff of a right, privilege or immunity secured by

7

the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law.'" Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (emphasis added) (quoting Bannum, Inc. v. City of Ft. Lauderdale, 901 F.2d 989, 996-97 (11th Cir. 1990)). In this case, Plaintiff brings her claim against Defendant Davidson in both his official and individual capacities. (Pl.'s Second Brief, Dkt. No. [12] at 12.) The Court considers the claim against Defendant in his official capacity before turning to the individual capacity claim.

### 1.   Official Capacity Claim

Plaintiff explains in her Second Brief that she "seeks to hold Davidson personally liable in his individual capacity for violating her constitutional rights and liable as a jailor in his official capacity for violating his job responsibilities." (Id.) Absent congressional abrogation, "[t]he Eleventh Amendment protects a State from being sued in federal court without the State's consent."[4] Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2002). This Eleventh Amendment immunity from suit in federal court applies not only in

---

[4] Congress did not abrogate Eleventh Amendment immunity for claims brought pursuant to Section 1983. Quern v. Jordan , 440 U.S. 332, 338 (1979).

8

suits against the state itself, but also in suits against an "arm of the state."  Id.

Thus, "neither a State nor its officials acting in their official capacities are

'persons' under § 1983" when sued for damages.  Will v. Michigan Dept. of

State Police, 491 U.S. 58, 71 (1989).

In Manders, the Eleventh Circuit held that Georgia sheriffs are "arms of

the state" when they establish and execute use-of-force policies at county jails

and, as such, are entitled to Eleventh Amendment immunity.  Id. at 1328.  The

court in Manders also noted that sheriff deputies, including those serving as

jailors, are employees of the sheriff.  Id. at 1311.  In Scruggs v. Lee, the

Eleventh Circuit extended the holding of Manders to find that Georgia sheriffs

are "arms of the state" entitled to Eleventh Amendment immunity when

establishing the policies and procedures for processing arrestees at county jails.

256 F. App'x 229, 232 (11th Cir. 2007).  Finally, relying on Manders, the court

in Scruggs further held that sheriff deputies, "[a]s employees of the sheriff,"

"are also entitled to Eleventh Amendment immunity."  Id.

In accordance with the foregoing, given that Defendant Davidson is an

employee of the Sheriff serving as a jailor, the Court finds that he is entitled to

Eleventh Amendment immunity from Plaintiff's official capacity claim.

9

Accordingly, Defendant Davidson's Motion to Dismiss the Amended

Complaint [7] is granted as to Plaintiff's official capacity claim.

     2.    <u>Individual Capacity Claim</u>

     Plaintiff's individual capacity claim against Defendant Davidson is not

barred by the Eleventh Amendment.  <u>See, e.g.</u>, <u>Gamble v. Fla. Dep't of Health</u>

<u>& Rehab. Servs.</u>, 779 F.2d 1509, 1518 (11th Cir. 1986) ("[T]he Eleventh

Amendment provides no bar to recovery of damages against state officers

acting in their individual capacities.").  Accordingly, the Court must determine

whether Plaintiff has alleged sufficient facts to state a plausible claim for relief

against Defendant Davidson in his individual capacity.

     As stated in the Background section, <u>supra</u>, Plaintiff alleges that

Defendant Davidson unreasonably seized Plaintiff in violation of the Fourth

Amendment.  Specifically, Plaintiff alleges that Defendant Davidson "showed

indifference to her constitutional rights after gaining knowledge there was no

probable cause for her to be retained and incarcerated."  (Am. Compl., Dkt. No.

[37] ¶ 31.)  In her Second Brief, Plaintiff explains that her claim against

Defendant Davidson stems not from her arrest or initial incarceration in the Hall

County jail, but rather from Defendant Davidson's failure to release Plaintiff

10

after verifying from the computer that Plaintiff was not the person for whom the

arrest warrant had been issued:

> Davidson in his memorandum of law . . . in support of his [Motion
> to Dismiss the Amended Complaint] focuses at length on the
> actions and claims against Defendant Andy Page and the initial
> incarceration of Cruz in the Hall County jail. Davidson does this in
> spite of the fact that [Plaintiff's] First Brief made clear, 'The
> relevant time frame is not when Davidson <u>receive</u> [sic] [Plaintiff],
> but when Davidson <u>refused</u> to release her when he verified on the
> computer that she was not the subject of the outstanding warrant.

(Dkt. No. [12] at 5 (citing Pl.'s First Brief, Dkt. No. [8] at 10).)

As a threshold matter, the Court has some doubt as to whether Plaintiff's

cause of action against Defendant Davidson sounds in the Fourth Amendment

and its prohibition against unreasonable seizures, as opposed to the Fourteenth

Amendment due process clause.[5]  While the Fourth Amendment governs

"seizures," the Fourteenth Amendment governs the treatment of arrestees

during pre-trial detention up until conviction.  <u>Burkett v. Alachua Cnty.</u>, 250 F.

---

[5] Plaintiff herself seems to be confused as to the constitutional source of her
Section 1983 claim.  Although she clearly brings this claim under the Fourth
Amendment, she relies on due process precedent in her Second Brief and argues,
"Davidson's [Motion to Dismiss the Amended Complaint] should be denied because
of Davidson's deliberate indifference to [Plaintiff's] due process rights.  Davidson
failed to release [Plaintiff] after his investigation clearly established the mistaken
identity of [Plaintiff] as the person for whom the warrant had been issued."  (Dkt. No.
[12] at 8.)

App'x 950, 952 n.5 (11th Cir. 2007).  However, in this circuit, "[t]he precise point at which a seizure ends (for purposes of Fourth Amendment coverage) and at which pretrial detention begins (governed until a conviction by the Fourteenth Amendment) is not settled . . . ."  Hicks v. Moore, 422 F.3d 1246, 1254 n.7 (11th Cir. 2005).  Compounding this uncertainty is the fact that in cases such as this one, where a person is arrested and detained pursuant to a valid warrant but on the basis of misidentification, two distinct causes of action can arise: the first challenges the arrest itself and arises under the Fourth Amendment, while the second challenges the subsequent detention as a violation of Fourteenth Amendment due process.  Accordingly, the Court must first consider, based on the facts alleged in the Amended Complaint, whether the Fourth Amendment is the proper vehicle for Plaintiff's cause of action.  If so, the Court must then determine whether Plaintiff has alleged sufficient facts to state a claim under that provision.

> ### i.    *Does the Fourth Amendment apply?*

As stated above, two causes of action may arise out of the arrest and detention of a plaintiff pursuant to a valid warrant but on the basis of misidentification.  First, the cause of action for mistaken arrests pursuant to a

12

valid warrant arises under the Fourth Amendment prohibition against unreasonable seizures and is governed by Rodriguez v. Farrell, 280 F.3d 1341 (11th Cir. 2002). Chapman v. City of Atlanta, 192 F. App'x 922, 924 (11th Cir. 2006). The facts of Rodriguez are strikingly similar to the facts of this case. In Rodriguez, the court was presented with a claim for unreasonable seizure under the Fourth Amendment brought by a plaintiff who, as a result of misidentification, had been arrested pursuant to a valid warrant that had been issued for someone else. 280 F.3d at 1343. The court held that such claims are governed by the "reasonable mistake" standard, according to which–as the name suggests–a mistaken arrest pursuant to a valid warrant will not constitute an unreasonable seizure provided the mistake was reasonable. Id. at 1345-48.

On the other hand, the cause of action for continued detention on the basis of misidentification sounds in the Fourteenth Amendment due process clause and is governed by the Supreme Court precedent of Baker v. McCollan, 443 U.S. 137 (1979). Chapman, 192 F. App'x at 924; Cannon v. Macon Cnty., 1 F.3d 1558, 1562 (11th Cir. 1993). In Baker, as in this case, the plaintiff was mistakenly arrested pursuant to a valid warrant issued for someone else and challenged his subsequent detention under the Fourteenth Amendment due

13

process clause.  443 U.S. at 143-44.  The plaintiff made clear that his Section

1983 claim against the sheriff was "not for the wrong name being placed in the

warrant or the failure to discover and change same or even the initial arrest of

the respondent, but rather for the intentional failure to investigate and determine

that the wrong man was imprisoned."  Id. at 143.  The Supreme Court rejected

the plaintiff's challenge, holding that the Fourteenth Amendment does not

require a sheriff executing an arrest warrant "to investigate independently every

claim of innocence," even those based on mistaken identity, nor require the

"official charged with maintaining custody of the accused named in the warrant

. . . to perform an error free investigation of such a claim."  Id. 145-46.

Despite its holding, however, the Supreme Court in Baker recognized

that at some point, continued detention on the basis of misidentification and in

the face of repeated protests of innocence may constitute a deprivation of liberty

without due process.  Id. at 145 ("We may even assume, *arguendo*, that . . .

mere detention pursuant to a valid warrant but in the face of repeated protests of

innocence will after the lapse of a certain amount of time deprive the accused of

'liberty. . . without due process of law.'").  On this basis, the Eleventh Circuit

has recognized a "constitutional right to be free from continued detention after

14

it was or should have been known that the detainee was entitled to release . . . ."
Cannon, 1 F.3d at 1563.  Nonetheless, given the holding of Baker, a plaintiff
challenging a detention following a mistaken arrest pursuant to a valid warrant
under the Fourteenth Amendment has a high hurdle to cross to state a claim for
relief.

As stated above, Plaintiff's claim for unreasonable seizure under the
Fourth Amendment stems from Defendant Davidson's refusal to release
Plaintiff after allegedly learning that Plaintiff had been misidentified.  Plaintiff
emphatically contends in her briefs that she is not challenging her initial
incarceration or when Defendant Davidson "received" her at the jail, but rather
when he refused to release her after looking at the computer.  The question thus
becomes whether Plaintiff can state a claim under the Fourth Amendment based
on her continued detention by Defendant at this point in time.

While Plaintiff's assertions give the Court some concern that Plaintiff
was no longer being seized at the time of the conduct being challenged, the
allegations in the Amended Complaint suggest that the booking procedure had
not yet ended at the time Defendant Davidson looked at the computer and
allegedly learned of Plaintiff's misidentification.  For example, Plaintiff alleges

15

that after Defendant Davidson examined the computer screen, Plaintiff was given a ticket, returned to the holding cell for one hour, and then brought back out to be fingerprinted and photographed.  In light of these allegations, and the fact that Defendant Davidson does not dispute the applicability of the Fourth Amendment to Plaintiff's claim, the Court will assume that Plaintiff was still being seized such that her claim is proper under the Fourth Amendment.[6]

> ii.   *Has Plaintiff stated a claim?*

Having concluded that Plaintiff was still being "seized" at the time of the allegedly unconstitutional conduct by Defendant Davidson, the Court further finds that Plaintiff has stated a claim for unreasonable seizure in violation of the

---

[6]See, e.g., Hicks, 422 F.3d at 1254 n.7,

Plaintiff asserts protection under the Fourth Amendment, which is commonly an easier standard for a plaintiff to meet.  At the time of fingerprinting, Plaintiff had already been arrested, delivered to the Jail, and had begun–but not completed–the booking process.  The original arresting officer had turned Plaintiff over to jailers, and he was not present during and did not participate in the events underlying the complaint.  The precise point at which a seizure ends (for purposes of Fourth Amendment coverage) and at which pretrial detention begins (governed until a conviction by the Fourteenth Amendment) is not settled in this Circuit.  We underline that Defendants never argue the strip search or fingerprinting was separate from Plaintiff's seizure; so we–will assume (for this case) Plaintiff was still being seized and–analyze the claim under the Fourth Amendment.

Fourth Amendment.  Under the Fourth Amendment, the same probable cause standard governing arrests applies to pretrial detention.  <u>See, e.g.</u>, <u>Baker</u>, 443 U.S. at 142 ("By virtue of its incorporation into the Fourteenth Amendment, the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty.").  This requirement of probable cause as a prerequisite to pretrial detention is satisfied when a detainee is arrested pursuant to a valid warrant.  <u>Id.</u> at 143.  However, even in cases where an arrest was made pursuant to a valid warrant, if probable cause later ceases, any subsequent detention is unreasonable.  Accordingly, in the case of a mistaken arrest pursuant to a valid warrant, when it is discovered that the arrestee has been misidentified and is not the person for whom the warrant was issued, probable cause no longer exists and the detention becomes unreasonable.

In this case, Plaintiff  has plainly alleged that Defendant Davidson continued to detain Plaintiff "after gaining knowledge there was no probable cause for her to be retained and incarcerated."  (Am. Compl., Dkt. No. [7] at 31.)  Specifically, viewing the allegations in the light most favorable to Plaintiff and drawing all reasonable factual inferences therefrom, Plaintiff alleges that

17

Defendant Davidson continued to detain Plaintiff after learning that Plaintiff was not the person for whom the warrant had been issued.  This is sufficient to state a claim for unreasonable seizure under the Fourth Amendment.

### iii.    Is Defendant entitled to qualified immunity?

Defendant Davidson argues that Plaintiff's individual capacity claim is barred by the doctrine of qualified immunity because Plaintiff has failed to show any constitutional violation and that Defendant's actions violate clearly established law.  (Def.'s Mot. to Dismiss, Dkt. No. [5-1] at 13;[7] Reply in Supp. Def.'s Mot. to Dismiss Am. Compl., Dkt. No. [14] at 7.)  Qualified immunity protects government officials performing discretionary functions from being sued in their individual capacities.  Wilson v. Layne, 526 U.S. 603, 609 (1999). Officials are shielded "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The qualified immunity analysis consists of two steps.  First, the court addresses the

---

[7] While the Court has dismissed Defendant's original Motion to Dismiss [5] as moot, Defendant incorporated by reference in his Motion to Dismiss the Amended Complaint [10] the arguments made in his original motion.  (Def.'s Mot. to Dismiss the Am. Compl., Dkt. No. [10] at 2.)

"threshold question" of whether the facts as alleged, viewed in the light most favorable to the plaintiff, establish a constitutional violation.  <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does the court proceed to the second step to determine whether that right was clearly established.  <u>Id.</u>

A constitutional right is clearly established "only if its contours are 'sufficiently clear that a reasonable official would understand what he is doing violates that right.'"  <u>Vaughan v. Cox</u>, 316 F.3d 1210, 1212 (11th Cir. 2003) (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)).  While the fact patterns of prior cases used to show that a right is clearly established need not be "fundamentally similar" or even "materially similar," the salient question is whether the law at the time of the alleged violation gave officials "fair warning" that their acts were unconstitutional.  <u>Holmes v. Kucynda,</u> 321 F.3d 1069, 1078 (11th Cir. 2003) (quoting <u>Hope v. Pelzer</u>, 536 U.S.730, 740 (2002)).

As stated above, Plaintiff has alleged sufficient facts to state a plausible claim for relief under the Fourth Amendment, namely, that Defendant violated her right to be free from unreasonable seizures when he detained Plaintiff despite knowing he lacked probable cause to do so.  The question thus becomes

19

whether Defendant's actions violate clearly established constitutional law, or, in other words, whether a reasonable official in Defendant's position would know that detaining someone without probable cause violates that person's constitutional rights.  The Court concludes that the right at issue in this case was clearly established.  A reasonable jailor would know that continuing to detain a person–even one arrested pursuant to a valid warrant–is unlawful when probable cause to detain that person ceases to exist.  Accordingly, the Court finds that based on the facts alleged in the Amended Complaint, Defendant Davidson is not entitled to qualified immunity against Plaintiff's Fourth Amendment claim.

### Conclusion

In accordance with the foregoing, the Court finds that Plaintiff has alleged sufficient facts to state a plausible claim for relief under the Fourth Amendment and that Defendant Davidson is not entitled to qualified immunity against this claim.  Accordingly, the Court hereby **DENIES** Defendant Davidson's Motion to Dismiss the Amended Complaint [10] as to Plaintiff's individual capacity claim.  Defendant's original Motion to Dismiss [5] is **DENIED, as moot**.

20

**SO ORDERED**, this   20th   day of January, 2012.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)