# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | |
|---|---|
| AMANDA CRUZ, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION NO.<br>: 2:11-CV-00111-RWS |
| JOSHUA DAVIDSON, ANDY PAGE, JOHN DOES 1-5, and CORPORATIONS A-E, | : |
| Defendants. | : |

## ORDER

This case comes before the Court on Defendant Joshua Davidson's ("Davidson") Motion for Reconsideration [20]. After reviewing the record, the Court enters the following Order.

## Background

### I.  Factual Background[1]

This case arises out of the mistaken arrest and subsequent detention of Plaintiff pursuant to an arrest warrant issued for another person. On June 19,

---

[1] This Background section is taken from the Court's Order of January 23, 2012 (Dkt. No. [16]), granting in part and denying in part Davidson's Motion to Dismiss the Amended Complaint (Dkt. No. [10]). Because the case is before the Court on a motion for reconsideration of this Order, the facts alleged in the Amended Complaint are taken as true.

2010 at approximately 7:45 p.m., while driving with her two children in Hall County, Georgia, Plaintiff was stopped by Defendant Andy Page, a Georgia State Patrol trooper, for a suspected violation of the state's seat belt laws. (Am. Compl., Dkt. No. [7] ¶¶ 5-8.) Defendant Page asked Plaintiff for her driver's license, which showed her date of birth to be February 7, 1978. (Id. ¶ 7.) After returning to the patrol car with Plaintiff's driver's license, Defendant Page discovered an outstanding warrant for the arrest of a woman with the same name as Plaintiff's. (Id. ¶ 10; Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s First Brief"), Dkt. No. [8] at 9.) When informed of the outstanding warrant for her arrest, Plaintiff told Defendant Page that she had never been arrested and that there were no outstanding warrants for her arrest, after which Defendant Page again returned to his patrol car. (Id. ¶ 11.) Several minutes later, Defendant Page asked Plaintiff if she had any tattoos, to which she replied "no." (Id. ¶ 11.) Defendant Page then asked to see Plaintiff's upper right arm, which bore no tattoos, and he could see that Plaintiff's legs likewise did not bear any tattoos. (Id. ¶ 12.) A few minutes later, Defendant Page handcuffed Plaintiff and placed her in the backseat of his patrol car. (Id. ¶ 13.)

In the patrol car, Plaintiff saw a computer screen in the front dashboard showing the picture of a woman that was not Plaintiff.  (Id. ¶ 14.)  Plaintiff also heard over the patrol car radio a description of the woman for whom the arrest warrant had been issued: she was said to have been born on November 18, 1979 and was described as being 5' 1" in height with light red hair and tattoos on her right arm, left leg, and right ankle.  (Id.)  Plaintiff is 4' 8" in height, has dark brown hair and no tattoos, and, as stated above, was born on February 7, 1978.  (Id. ¶ 15.)

Plaintiff alleges that "after confirming that the person for who [sic] the warrant had been issued did not match [Plaintiff]," Defendant Page removed Plaintiff from the patrol car.  (Id. ¶ 16.)  He again asked Plaintiff if she had any tattoos or if she had had any removed, to which Plaintiff responded in the negative.  (Id.)  Defendant Page decided to take Plaintiff to the Hall County jail for others to investigate her identity further.  (Id. ¶ 17.)

Defendant Davidson, a Hall County Sheriff jailor, was the officer who received Plaintiff and booked her into the jail.  (Id. ¶¶ 1, 20.)  When Plaintiff first arrived at the jail, a female Hall County Sheriff jailor frisked Plaintiff and gave her a pair of jail flip flops.  (Id. ¶ 19.)  Davidson then placed Plaintiff in a

3

holding cell for approximately one hour, after which Plaintiff was brought out for questioning.  (Id.)  Defendant Davidson and four or five other Sheriff jailors questioned Plaintiff about her identity (i.e., her "date of birth, social security number, maiden name, height, driver's license number and if she had any tattoos") while looking at an image on a computer screen.  (Id. ¶ 21.)  Each jailor who looked at the screen commented to Defendant Davidson that "Plaintiff did not fit the description and that the picture on the computer screen was not her."  (Id. ¶ 22.)  Defendant Davidson gave Plaintiff a ticket signed by Defendant Page for the offense of safety restraint violation and returned Plaintiff to the holding cell.  (Id. ¶ 23.)

Approximately one hour later, Plaintiff was brought out of the holding cell to be finger printed and photographed.  (Id. ¶ 24.)  She was thereafter returned to the holding cell, where she remained overnight before being released the next morning.  (Id. ¶¶ 25-26.)  Throughout the events described above, Plaintiff repeatedly asserted to Defendant Davidson and others that there were no outstanding warrants for her arrest and that there was no justification for her incarceration.  (Id. ¶¶ 20, 22, 24.)

4

## II.     Procedural Background

Based on the foregoing facts, on May 24, 2011, Plaintiff filed the Amended Complaint against Davidson, among other defendants, seeking damages for unreasonable seizure under the Fourth Amendment, pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Davidson violated her Fourth Amendment right to be free from unreasonable seizures by detaining Plaintiff "after gaining knowledge there was no probable cause for her to be retained and incarcerated." (Id. ¶ 31.)

On June 10, 2011, Davidson filed his Motion to Dismiss the Amended Complaint (Dkt. No. [10]), which the Court granted in part and denied in part by Order dated January 23, 2011 (Dkt. No. [16]). The Court granted the motion to dismiss as to Plaintiff's official capacity claim but denied it with respect to the individual capacity claim, rejecting Davidson's defense of qualified immunity. (Id. at 20.) The Court reasoned as follows:

> In this case, Plaintiff has plainly alleged that Defendant Davidson continued to detain Plaintiff "after gaining knowledge there was no probable cause for her to be retained and incarcerated." (Am. Compl., Dkt. No. [7] at 31.) Specifically, viewing the allegations in the light most favorable to Plaintiff and drawing all reasonable factual inferences therefrom, Plaintiff alleges that Defendant Davidson continued to detain Plaintiff after learning that Plaintiff

5

> was not the person for whom the [arrest] warrant had been issued. This is sufficient to state a claim for unreasonable seizure under the Fourth Amendment. . . .
>
> The question thus becomes whether [Davidson]'s actions violate clearly established constitutional law, or, in other words, whether a reasonable official in [Davidson]'s position would know that detaining someone without probable cause violates that person's constitutional rights.  The Court concludes that the right at issue in this case was clearly established.  A reasonable jailor would know that continuing to detain a person . . . is unlawful when probable cause to detain that person ceases to exist.  Accordingly, the Court finds that based on the facts alleged in the Amended Complaint, Defendant Davidson is not entitled to qualified immunity against Plaintiff's Fourth Amendment claim.

(Id. at 17-18, 19-20.)

Davidson now moves the Court to reconsider its ruling denying the motion to dismiss as to Plaintiff's individual capacity claim and rejecting Davidson's claim to qualified immunity.  (See generally Davidson's Mot. for Reconsideration, Dkt. No. [20].)  In support of this motion, Davidson argues that Plaintiff's overnight detention was justified independently of the arrest warrant by Plaintiff's violation of Georgia's seat belt law, O.C.G.A. § 40-8-76.1.  (Id.)  Davidson further argues that he raised this argument in his motion to dismiss but that the Court improperly "overlooked" it.  (Id.)  The Court sets out the legal standard governing motions for reconsideration before considering

6

Davidson's argument that Plaintiff has failed to state a claim for unreasonable seizure in light of her violation of Georgia's seat belt law.

## Discussion

### I.     Legal Standard

Under the Local Rules of this Court, "[m]otions for reconsideration shall not be filed as a matter of routine practice[,]" but rather, only when "absolutely necessary." LR 7.2(E), NDGa.  Such absolute necessity arises where there is "(1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact." Bryan v. Murphy, 246 F. Supp. 2d 1256, 1258-59 (N.D. Ga. 2003).  A motion for reconsideration may not be used "to present the court with arguments already heard and dismissed or to repackage familiar arguments to test whether the court will change its mind." Id. at 1259.  Nor may it be used "to offer new legal theories or evidence that could have been presented in conjunction with the previously filed motion or response, unless a reason is given for failing to raise the issue at an earlier stage in the litigation." Adler v. Wallace Computer Servs., Inc., 202 F.R.D. 666, 675 (N.D. Ga. 2001).  Finally, "[a] motion for reconsideration is not an opportunity for the moving party . . . to instruct the

7

court on how the court 'could have done it better' the first time." Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995), aff'd, 87 F.3d 1242 (11th Cir. 1996).

## II.   Analysis

In this case, Davidson moves the Court to reconsider its prior Order on grounds that the Court committed clear error in denying the motion to dismiss as to Plaintiff's individual capacity claim. (Davidson's Mot. for Reconsideration, Dkt. No. [20] at 12.)  In particular, as stated above, Davidson argues that Plaintiff's overnight detention was justified by her violation of Georgia's seat belt law and therefore "did not, and could not, amount to a constitutional violation." (Id. at 2-3.)  Davidson thus argues that the Court committed clear error in finding that Plaintiff had stated a claim under the Fourth Amendment and in rejecting Davidson's defense of qualified immunity. (Id. at 2-4.)

The Court finds this argument unavailing.  The Court will assume, without deciding, that it would be constitutionally permissible to detain Plaintiff overnight for a violation of Georgia's seat belt law.  Even assuming this to be true, however, the allegations of the Amended Complaint–taken as true and

8

viewed in the light most favorable to Plaintiff, as they must be on a motion to dismiss–demonstrate that Plaintiff was not detained overnight for a violation of the seat belt law,[2] but rather was detained pursuant to the arrest warrant and Defendants' mistaken belief that Plaintiff was the person for whom the warrant had been issued.

For example, Plaintiff alleges that after the initial traffic stop for the suspected violation of the seat belt law, Plaintiff was removed from the car and subsequently handcuffed only after Defendant Page discovered the arrest warrant. (Am. Compl., Dkt. No. [7] ¶¶ 10-12.)  It is also clear from the allegations of the Amended Complaint that Plaintiff was removed from the car and handcuffed *because of* the arrest warrant: Defendant Page did not apprise Plaintiff that she was being arrested for her violation of the seat belt law; on the contrary, the conversation between the two prior to Plaintiff's arrest related solely to Plaintiff's physical appearance as compared to that of the woman for whom the warrant had been issued (e.g., whether Plaintiff had any tattoos

---

[2] The Court notes that the charge against Plaintiff for violation of the seat belt law subsequently was dismissed. (Am. Compl., Dkt. No. [7] ¶ 28.)

9

matching those of the woman for whom the warrant had been issued).  (Id. ¶¶ 10-17.)

Similarly, the conversation at the Jail regarding Plaintiff pertained solely to whether she was, in fact, the woman for whom the arrest warrant had been issued.  (Id. ¶¶ 20-24.)  Plaintiff alleges that when she entered the Jail, she told Davidson there was no warrant out for her arrest but that Davidson ignored her.  (Id. ¶ 20.)  She was then placed in a holding cell for approximately one hour, after which time she was removed from the cell and questioned regarding *her identity and physical appearance*.  (Id. ¶¶ 20-21.)  Specifically, Plaintiff was questioned–an hour after she was accepted into the Jail–regarding her "birth, social security number, maiden name, height, driver's license number and if she had any tattoos" while Davidson and other sheriff jailors "look[ed] at an image on a computer screen"–the image of the woman for whom the warrant had been issued.  (Id. ¶¶ 21-22.)  This line of questioning demonstrates to the Court–at this stage in the litigation–that Plaintiff was being held not because of a violation of the seat belt law, but rather pursuant to the arrest warrant.  Finally, Plaintiff alleges that Davidson continued to detain her even after discovering

AO 72A
(Rev.8/82)

that no warrant had been issued for her arrest and, thus, that "there was no probable cause for her to be retained and incarcerated." (Id. ¶ 31.)

As explained in the Court's prior Order [16], the Court must accept the facts alleged in the Amended Complaint as true for purposes of considering Davidson's motion to dismiss. Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). The Court is also to construe those facts–and all reasonable inferences therefrom–in the light most favorable to Plaintiff. Id. Considering the allegations of the Amended Complaint accordingly, it appears to the Court that Plaintiff was arrested and incarcerated pursuant to the arrest warrant, not because of a possible seat belt violation, and detained overnight even after Davidson learned that Plaintiff was not the person for whom the warrant had been issued. At this motion to dismiss stage of the litigation, the Court concludes–as it did in its prior Order–that Plaintiff has stated a claim for unreasonable seizure under the Fourth Amendment and alleged facts that, if true, would preclude the defense of qualified immunity.

## Conclusion

In accordance with the foregoing, Davidson's Motion for Reconsideration [20] is **DENIED**.

11

**SO ORDERED**, this  28th  day of August, 2012.


_____
**RICHARD W. STORY**
United States District Judge

12